UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CHILDRESS, #365065,

        Plaintiff,

                                CIVIL ACTION NO. 10-11008

       v.                        DISTRICT JUDGE MARK A. GOLDSMITH

                                 MAGISTRATE JUDGE MARK A. RANDON

JOHN MICHALKE,

        Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT MICHALKE'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 182), GRANT
MICHALKE'S MOTION TO DISMISS CHILDRESS' FIFTH AMENDMENT
CLAIMS (DKT. NO. 143), DENY CHILDRESS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 185), DENY THE MILNE DEFENDANTS MOTION TO
DISMISS AND FOR SUMMARY JUDGMENT (DKT. NO. 183) AND DISMISS
PLAINTIFF'S CLAIMS AGAINST ALL DEFENDANTS WITH PREJUDICE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

In 2007 and 2008, Plaintiff Robert Childress orchestrated an elaborate scheme to defraud

lenders of their security interests in luxury automobiles.  The scheme operated in three phases:

an apparently unwitting third-party, Tomeka Gilmore (or another of Childress' girlfriends),

obtained financing and purchased the vehicles; an accomplice later submitted fraudulent

documentation to remove the lenders' valid security interests (liens) from the certificates of title;

and, the facially lien-free vehicles were sold for cash, traded-in for new pre-paid leases, or

pawned.  Childress received the proceeds.

1

Defendant John Michalke, then Commander of the Macomb County Sheriff's Department Auto Theft Squad ("MATS")[1] and a 23-year department veteran, was largely responsible for ending this criminal enterprise.  Michalke ordered Childress' arrest and seized or placed stop actions on several vehicles, with questionable titles, linked to Childress or his girlfriends.

Childress was tried on seven counts involving at least three of the seized vehicles.  But, after a bench trial, the judge convicted Childress of: (1) larceny by conversion; (2) intent to pass false title; and, (3) false pretenses of $20,000.00 or more, involving only one vehicle.

From prison in 2010, Childress sued Michalke and 33 other defendants *pro se*, alleging a wide-ranging conspiracy to seize his vehicles and other personal property – without a warrant – in violation of the United States Constitution (Dkt. No. 1).  Specifically, he alleges that Michalke unlawfully seized a:

a. 2004 Black Range Rover, VIN # SALME114X4A145579 ("Rover 5579"),

b. 2002 Mercedes G500, VIN #WDCYR49E32X133032 ("Mercedes 3032")

c. 2004 White Range Rover, VIN #SALME11474A169144 ("Rover 9144"),

d. 2007 Black Range Rover, VIN #SALME15407A257158 ("Rover 7158"),

e. 2007 Lexus LX470, VIN #JTJHT00W4724963 ("Lexus 4963"),

f. Ford F350 V10, VIN #1FTWIN33Y18SEC58442 ("Ford 8442"),

g. Ford F350 SD, VIN #1FTWW33R08EC20841 ("Ford 0841"),

---

[1] *See*, Plaintiff's criminal trial transcript ("Tr. __") (Dkt 182-5, Tr. 90).

2

h. 2008 Blue Mercedes CLK 350, VIN #WDBTK56F58T091694 ("Mercedes 1694"),[2]
and

i. 40 electronic keys and key fobs, 7 license plates, 22 new car window
stickers, a valise, a coat, and a postal money order.

(Dkt. No. 199, p. 13).

Upon motion of several defendants, the Court dismissed Childress' lawsuit without prejudice, but granted him leave to amend his Complaint. Subsequently, Childress was allowed to proceed against *only* Michalke (Dkt. Nos. 131, 170) – who now moves for summary judgment (Dkt. No. 182).[3]

The issues raised in the motion are fully briefed (Dkt. Nos. 191, 193); oral argument was not held. *See* E.D. Mich. LR (f)(1) ("[t]he court will not hold a hearing on a motion . . .in a civil case where a person is in custody unless the judge orders a hearing."). Because Michalke's seizures did not violate either: (1) a constitutional right; or, (2) a constitutional right that was clearly established, he is entitled to qualified immunity. Therefore, this Magistrate Judge **RECOMMENDS** that Michalke's motion be **GRANTED** and Childress' lawsuit be **DISMISSED WITH PREJUDICE**.[4]

## II. FACTS

**A.    Overview of the Scheme**

---

[2] As discussed below, Michalke took no steps to seize or place a stop action on this vehicle.

[3] Childress' motion to file excess pages (Dkt. No. 190) is GRANTED; his motion to strike Michalke's reply (Dkt. No. 195) is DENIED.

[4] A number of other dispositive motions are pending. Recommendations as to these motions are discussed in Section III(D), below.

The Michigan Court of Appeals set forth the facts upon which Childress' conviction

(relevant to this case) was based:

> [Childress'] conviction arises from his involvement in a scheme in Macomb County in which he persuaded his girlfriend, Tomeka Gilmore, to purchase or lease several motor vehicles in financed transactions, and then traded in one of the vehicles for consideration after obtaining a replacement certificate of title that falsely indicated that there was no security interest on the vehicle. Although all purchase agreements, lease agreements, and financing contracts were in Gilmore's name, [Childress] conducted all of the negotiations and handled all of the transactions, and he took possession of the vehicles. Gilmore testified that she agreed to help [Childress] acquire the vehicles because she trusted [him], believed that he needed the vehicles for his "leasing company," and he told her that he would make all of the lease and installment payments.

> One of the purchased vehicles, a Land Rover, was financed by Capital One Finance ("Capital One"). After a certificate of title was issued that listed Capital One as a secured creditor, a replacement certificate of title was obtained that listed Gilmore as the owner of the vehicle, but did not list Capital One's lien. Evidence indicated that the Secretary of State issued the replacement certificate of title after it was presented with (1) a form, with Gilmore's signature, authorizing a "Terence Jones" to conduct business pertaining to the Land Rover on her behalf, and (2) a separate document indicating that the Capital One lien had been satisfied. Gilmore denied knowledge of either document, denied knowing anyone named Terence Jones, and claimed that the signature on the authorization form was not hers. [Childress] later used the false certificate of title to negotiate a trade-in of the Land Rover in exchange for a prepaid lease of a Ford Fusion from Russ Milne Ford, and a cash difference of approximately $20,000. Russ Milne Ford issued the check payable to Gilmore, but Gilmore gave the proceeds to [Childress] when she cashed the check.

*People v. Childress*, Dkt. No. 299592, 2012 WL 1890181, at *1 (Mich. App. May 22, 2012).

## B.    Discovery of the Scheme by Russ Milne Ford

Gilmore acquired three vehicles from Russ Milne Ford between November and

December of 2007: Ford 8442 was purchased on November 9, 2007 (Dkt. No. 182-3, Tr. 109);

Ford 0841 was leased on November 16, 2007 (Dkt. No. 182-3, Tr. 111); and the Fusion lease

4

plus cash for Rover 5579 occurred on December 28, 2007 (Dkt. No. 182-3, Tr. 117-120).  While Gilmore signed the deals, Childress negotiated the Rover 5579 trade-in transaction, and his name appeared on the proof of insurance (alongside Gilmore's) for Ford 8442 and 0841 on the dates those vehicles were purchased (Dkt. No. 182-3, Tr. 130-131).

The scheme began to unravel when – one week after obtaining the Fusion lease – Gilmore and Childress sought to upgrade the Fusion for a Mustang (Dkt. 182-3, Tr. 134). William Cate, Milne's Sales Manager, testified that Ford Motor Credit denied financing for the Fusion/Mustang deal because of a "hold or fraud alert" on Gilmore (Dkt. 182-3, Tr. 135).  After receiving this information, Cate became concerned about Gilmore's recent Range Rover trade-in, so he: "ran a CARFAX"; contacted the previous owner of Rover 5579, a local foreign car dealer; and discovered that Capital One had an approximately $50,000.00 lien on Rover 5579. Importantly, Gilmore traded this vehicle to Milne Ford, representing that it was paid-off in full (lien-free). (Dkt. No. 182-3, Tr. 136-138).  Cate contacted the Macomb County Sheriff's Department and advised them that Gilmore had fraudulently obtained the Fusion by providing a falsified title for Rover 5579 (Dkt. No. 182-3, Tr. 139; Dkt. No. 182-5, Tr. 103). He then told Gilmore and Childress to come in to make the Fusion/Mustang exchange without disclosing his revelation (Dkt. No. 182-3, Tr. 138-139).

On Friday, January 4, 2008, Childress and Gilmore drove to Milne – in Mercedes 3032 – expecting to make the Fusion/Mustang exchange.  Before they arrived, Michalke spoke to MATS Detective James Hertel and learned that Cate had confirmed the lien on Rover 5579. Michalke then ordered Childress and Gilmore arrested at the scene (for larceny by conversion).

He also ordered Mercedes 3032 seized (Dkt. No. 182-5, Tr. 117).[5]  Michalke personally took

over the investigation on Monday, January 7, 2008 (Dkt. No. 182-5, Tr. 117).

## C.  Michalke's Investigation[6]

On January 7, 2008, Michalke and Hertel went to Milne Ford.  They met with Milne's

President, General Manager and Sales Manager.  Michalke learned about Gilmore's prior

acquisition of the two F350s (Ford 8442 and 0841) and obtained paperwork, which included a

description of the vehicles and identification numbers ("VIN") (Dkt. No. 182-12, p. 2).  Gilmore

and Childress had made only one payment on either F350 since acquiring them.  Michalke also

seized Rover 5579, which Milne Ford had received as a trade-in.

On January 11, 2007, Michalke contacted the Michigan Secretary of State ("MSOS") and

placed stop actions on the Fusion, Ford 8442 and Ford 0841.[7]  He also learned from a Land

Rover Capital Group representative that Gilmore was the subject of an active fraud investigation

involving the purchase of another Range Rover (Rover 9114).  According to the representative,

Gilmore purchased Rover 9114 on October 22, 2007 and financed the deal with a $38,680.00

loan from Ford Motor Credit.  After receiving paperwork confirming the deal, Michalke placed a

stop action on Rover 9114.  Last, a Wells Fargo Auto Finance Investigator told Michalke that

Mercedes 3032 (the car Childress and Gilmore drove to Milne Ford) – a vehicle with a facially

---

[5] Detective Hertel had also talked to his Oakland County counterpart, Chris Cole, who was actively investigating Childress for similar conduct (Dkt. No. 182-12, p. 2).

[6] This summary does not include all of Michalke's investigatory actions.  Michalke's investigation is detailed in the "Macomb County Sheriff Follow-Up Report" (Dkt. No. 182-12) and in his trial testimony (Dkt. No. 192-5, Tr. 69-119).  Childress does not appear to contest the substance of the investigation.  Instead, he challenges the propriety of the seizures.

[7] According to Michalke, a stop action prevents any future title transactions or changes in ownership (Dkt. No. 182-12, p. 3).

lien-free title – was in fact encumbered by a $38,678.80 Wells Fargo lien. Michalke reviewed the title history of Mercedes 3032 and discovered that Gilmore, through an appointed agent and accomplice, Terrance Jones, applied to MSOS for a new title to show a fraudulent "release of lien."

On January 15, 2008, Michalke reviewed the title history of Rover 5579 (traded to Milne) and learned that it too was subject to a release of lien by Jones. Michalke also made contact with a State Farm Insurance Investigator, who advised him that Childress had nine State Farm insured vehicles –including a third Range Rover.

Detective Cole was independently investigating Childress for similar allegations in Oakland County. On January 17, 2008, Cole told Michalke that at least one of the Range Rovers associated with Childress may be located at Motor City Pawnbrokers in Macomb County. A few days later, Michalke talked to the company's owner and learned that Childress had pawned Rover 9144 with a purportedly "clear" title for $15,000.00. Michalke knew that the title was not clear but, instead, subject to a $38,680.00 lien.

On February 15, 2008, Michalke confirmed Land Rover Capital's investigation into Rover 7158. The representative told Michalke that: (1) Childress and Kameshia Davis purchased Rover 7158; (2) they made no payments on the vehicle; and, (3) the vehicle's whereabouts was unknown. Michalke opened a file on Rover 7158.

On February 19, 2008, Michalke and another detective went to the address on Childress' driver's license. Michalke says the house appeared to be unoccupied: there was a "for sale" sign on the front lawn; one foot of undisturbed snow on the driveway; the home appeared to be sparsely furnished (which Michalke observed through a window); and, there was a real estate

lock box on the garage.  Michalke rang the doorbell; there was no answer.  He observed a white Ford F-350 parked in the home's driveway that matched the description of one of the missing trucks from Milne Ford.  Michalke approached the truck, and confirmed through the VIN number – without entering it – that it was Ford 8442.  He seized the vehicle, pending the outcome of his investigation.

Michalke also looked through the garage window and saw three more vehicles, including a silver Ford sedan that he believed was the Fusion Gilmore leased as part of the Rover 5579 trade-in at Milne Ford; he prepared an affidavit and search warrant for the home.  A magistrate signed the search warrant, which read, in part:

> The PROPERTY to be searched for and seized, if found, is specifically described as: a 2008 Ford Fusion 4dr, silver VIN 3FAHP07Z28R165584, a Ford F350 pick-up truck, VIN...0841, *and any other vehicles which may be stolen, or obtained under fraudulent circumstances, or any other evidence of a crime*.
>
> Any paperwork, insurance forms, car titles, registration certificates, computers used in the commission of criminal activity, any personal records or financial documents which would further a criminal investigation.

(Dkt. No. 182-15, Search Warrant) (emphasis added).

The search warrant was executed the same day, February 20, 2008.  Inside the garage was Lexus 4963 (leased by Childress and Glenda Gaddie from Toyota Lease Trust), the Ford Fusion obtained from Milne Ford, and Rover 7158.  All three vehicles were seized, along with black leather binders containing miscellaneous paperwork (Dkt. No. 182-16, Search Warrant Return).

### III.  ANALYSIS

### A.  Standard of Review

8

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden to demonstrate an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

## B. The Fourth Amendment and Warrantless Automobile Seizures

The Fourth Amendment requires warrants, based upon probable cause, before "persons, houses, papers and effects" are searched or seized. U.S. CONST. amend. IV. However, there are a few well-established exceptions to the warrant requirement. Two are relevant here: the automobile exception and the plain view exception.

9

### 1. The Automobile Exception

A warrantless seizure of an automobile is appropriate where there is probable cause to associate it with criminal activity. *Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 389 (6th Cir. 1987). Two policy considerations underlie this exception. First, given the "inherent mobility" of automobiles, evidence would be lost if police officers were required to obtain warrants when probable cause existed to immediately seize them. *California v. Carney*, 471 U.S. 386 (1985) ("[t]he mobility of automobiles, we have observed, 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.'" (quoting *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976))). Second, there is a reduced expectation of privacy in automobiles. *United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007) (warrantless seizure of automobile permissible because of the reduced expectation of privacy).

The automobile exception has been upheld even in circumstances where the vehicle seized was temporarily inoperable or the defendant associated with it was in custody. *United States v. Mercado*, 307 F.3d 1226, 1229 (10th Cir. 2002) (vehicle inoperable because of mechanical problems but capable of being repaired in hours); *United States v. Zahursky*, 580 F.3d 515, 522-23 (7th Cir. 2009) (even though defendant was arrested, an accomplice could move the vehicle).

Seizures made under the automobile exception do not violate the Fourth Amendment. Alternatively, police officers are entitled to qualified immunity for the warrantless seizure of automobiles, where "officers of reasonable competence could disagree whether any rights were

10

being violated." *Figetakis v. City of Cuyahoga Falls*, 112 F. A'ppx 393 (6th Cir. 2004); *Waters v. City of Morristown*, 242 F.3d 353, 361 (6th Cir. 2001).

### 2. The Plain View Exception

"Under the plain-view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" *U.S. v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (internal citation omitted).

## C. Qualified Immunity

Michalke says he is entitled to qualified immunity on Plaintiff's § 1983 claims.[8]  The doctrine of qualified immunity generally shields state actors from liability under § 1983 based on their discretionary acts.  *See Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Daugherty v. Campbell*, 935 F.2d 780, 783-84 (6th Cir. 1991).  As noted by the Sixth Circuit in *Daugherty*, "[q]ualified immunity entitles its possessor to immunity from suit rather than a mere defense to liability.'" *Id.* at 783 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Thus, government actors have the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin.  *Wyatt*

---

[8] Michalke also makes two additional arguments, not subsumed within the immunity argument: (1) Childress lacked standing to complain of the seizures; and (2) the *Heck* doctrine bars the claim (on Rover 5579).  "Although the right to challenge a search on Fourth Amendment grounds is generally referred to as 'standing,' the Supreme Court has clarified that the definition of that right 'is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.' Accordingly, standing to challenge a search *is not* a threshold issue that must be decided before reaching the question of whether a search was or was not constitutional. *U.S. v. Kennedy*, 638 F.3d 159, 163 (3rd Cir. 2011) (citations omitted) (emphasis added).  Therefore, these arguments are not addressed, because qualified immunity is dispositive of Childress' claims.

*v.Cole*, 504 U.S. 158, 167 (1992).

Government actors may lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known. *Anderson*, 483 U.S. at 638-39; *Harlow*, 457 U.S. at 818. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819).

Childress bears the burden to defeat this immunity, which is a legal issue to be decided by the Court. *See Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999). A court must consider: (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and, (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are not required to address these questions in sequential order. *Pearson v. Callahan,* 555 U.S. 223 (2009).

"When conducting an inquiry to determine whether a constitutional right is clearly established, the law of our [C]ircuit requires us to look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our [C]ircuit, and finally to decisions of other circuits." *Daugherty*, 935 F.2d at 784 (citations and quotation marks omitted). The standard for qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. . . ." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)) (quotation marks omitted). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official

12

would understand that what he is doing violates that right." *Russo*, 953 F.2d at 1042. Although

it need not be the case that "the very action in question has previously been held unlawful . . . in

the light of pre-existing law the unlawfulness must be apparent." *Id.* Immunity applies if

reasonable officials could disagree as to whether the conduct violated Childress' rights.

*McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996). However, the doctrine offers no

protection to "the plainly incompetent or those who knowingly violate the law." *See Malley v.

Briggs*, 475 U.S. 335, 341 (1986).

### 1. Mercedes 1694 – No Seizure

Michalke neither physically seized nor placed a stop action on Mercedes 1694.

Therefore, no constitutional right was violated with respect to this vehicle and qualified

immunity applies. Childress alleges that Michalke defamed his character and tortiously

interfered with his contractual relationship with Mercedes Benz Financial Services USA, LLC.

(Dkt. No. 191, CM/ECF p. 17, 56-57). But, these state law allegations do not rise to the level of

constitutional violations. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (injury to one's reputation

"is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of

law").[9]

### 2. Rover 7158, Lexus 4963 and Miscellaneous Personal Effects – Seizures Proper Under the Search Warrant or Plain View Exception to the Warrant Requirement

Michalke argues that the seizures of Rover 7158 and Lexus 4963 fell within the search

---

[9] Childress' state law claims must be dismissed because "'if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.' " *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) (quoting *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966))). As discussed below, none of Childress' federal claims should survive Michalke's summary judgment motion.

warrant's general description of "any other vehicles which *may* be stolen, or obtained under fraudulent circumstances." (Emphasis added).  Childress responds that in the absence of a specific description, the vehicles were not covered by the warrant and unlawfully seized. Although Michalke should have provided a more specific description of Rover 7158, he is entitled to qualified immunity for his seizure of both vehicles.

"[T]he degree of specificity required [to seize items in a search warrant] is flexible and will vary depending on the crime involved and the types of items sought," making "a description . . . valid if it is as specific as the circumstances and nature of the activity under investigation permit." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988) (quoting *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir.1985) (internal quotation marks omitted)).  "However. . . 'a warrant referring to stolen property of a certain type is insufficient if that property is common.'" *Wheeler v. City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011) (quoting *United States v. Campbell*, 256 F.3d 381, 388-89 (6th Cir.2001)).  In *Wheeler*, the Sixth Circuit explained that the requirement of additional descriptive details – when available – "help[s] distinguish between contraband and legally possessed property." *Id.* at 942.

Before Michalke executed the search warrant, he knew that Land Rover Capital had initiated a fraud investigation on Rover 7158; he could have – but did not – specifically describe Rover 7158 in the search warrant.  However, it does not appear that Michalke was aware of Lexus 4963 before obtaining the search warrant.

14

Michalke's failure to more particularly describe Rover 7158 *might* have precluded a finding of qualified immunity. *See id.*[10]  However, Michalke legally entered the garage pursuant to the search warrant, which specifically described the Ford Fusion.  When he did, Rover 7158 was in plain view and  – notwithstanding the failure to describe it in the search warrant – Michalke's seizure of it was reasonable, given: (1) his knowledge of Land Rover Capital's investigation into Rover 7158; and, (2) and his prior investigation elucidating Childress' role in the scheme to illegally obtain luxury vehicles. *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) ("An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.").  In sum, Rover 7158 was either properly seized under the plain view exception or, alternatively, reasonable officers could have differed as to whether it was.  Either way, Michalke is entitled to qualified immunity.

Lexus 4963 – about which Michalke had no prior knowledge – fell within the scope of the warrant and was seizable as likely contraband because of its location inside the garage alongside two other vehicles suspected of being fraudulently obtained and nearby Ford 8442 (in the driveway).  There was no constitutional violation.  Alternatively, a reasonable officer would not have believed the search warrant precluded the seizure of Lexus 4963, given Michalke's

---

[10] This Magistrate Judge agrees with Michalke and finds that both vehicles were properly seized pursuant to the search warrant, in the absence of the plain view exception. *See United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) ("even evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant.") (internal quotation marks omitted); *Marcilis v. Township of Redford*, 693 F.3d 589, 601-02 (6th Cir. 2012) (district court properly granted police officers qualified immunity with respect to the seizure of three vehicles not specifically described in the search warrant).

prior investigation.  Michalke should receive qualified immunity for his seizure of Lexus 4963.

Childress also claims various personal effects were seized (e.g., license plates and key fobs, etc.).  Although these items were not listed on the return, the search warrant permitted their seizure.  No Fourth Amendment violation occurred.

### 3.  Mercedes 3032, Rover 5579, Rover 9144, Ford 8442 and Ford 0841 – Warrantless Seizures Proper Under the Automobile Exception

Michalke is also entitled to qualified immunity with respect to the seizures of Mercedes 3032, Rover 5579, Rover 9144, Ford 8442 and Ford 0841, because Childress has not met his burden, "to show that no reasonable officer would have concluded, under the totality of the circumstances, that probable cause" did not exist to seize or place stop actions on these vehicles. *See Provience v. City of Detroit*, No. 12-1576, ___ F. A'ppx ___, 2013 WL 3357994, at *6 (6th Cir. July 5, 2013).  Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

### a.  Mercedes 3032 – Used in the Commission of a Crime

Childress and Gilmore drove Mercedes 3032 to Milne Ford where they were arrested, attempting to upgrade a Fusion to a Mustang financed entirely by a fraudulent trade-in.  At the time of the seizure in 2008, as it does today, Michigan law authorized law enforcement to remove vehicles from "public or private property. . .[i]f the vehicle must be seized to preserve evidence of a crime, or when there is reasonable cause to believe that the vehicle was used in the commission of a crime." Mich. Comp. Laws 257.252d(1)(e).  In addition, in 1999, the United States Supreme Court held that where probable cause exists to seize a vehicle, it may be seized

16

on public property without a search warrant.  *Florida v. White,* 526 U.S. 559 (1999).

Childress argues that the seizure of Mercedes 3032 violated the Fourth Amendment because it was taken from private property (i.e., Milne Ford) and that the Michigan statute does not apply to owners – like Gilmore – who did not have prior knowledge of or consent to the commission of the crime.  Both arguments are unavailing.  First, even in the absence of the Michigan statute, Milne Ford did not object to the seizure of this vehicle from *its* property; Childress lacks standing to complain. Moreover, in light of Sixth Circuit precedent at the time, the opinions of reasonable officers could have differed regarding the propriety of seizing Mercedes 3032 from the dealership with or without Milne Ford's permission. *See Autoworld Specialty Cars, Inc.*, 815 F.2d at 389 (upholding warrantless seizure of automobiles *from dealership's showroom floor* because "the officers had probable cause to associate the vehicles with . . . criminal activity and the vehicles were readily mobile by the turn of an ignition key.").

Second, Childress misunderstands the application of qualified immunity: it is based on a reasonable officer's belief at the time – not in hindsight. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (to determine whether probable cause existed, courts must view the facts "from the perspective of the reasonable official on the scene" and not be tempted "to look back in hindsight and second-guess").  When Mercedes 3032 was seized, on January 4, 2008, Michalke was unaware that Gilmore was an unwitting accomplice.  This revelation came later. And, it is why Michalke ordered Childress *and* Gilmore arrested at the scene.  Michalke is entitled to qualified immunity.

### b.  Rover 5579 – Traded-in with Falsified Title

Michalke's investigation revealed that Gilmore presented Rover 5579 as lien-free,

17

although it was encumbered by a $50,000.00 lien. Gilmore submitted a falsified title.  Given Michalke's investigation, at a minimum, reasonable officers could have disagreed on whether there was probable cause to seize Rover 5579 without a warrant under the automobile exception.[11]

### c.  Ford 8442 – Plain View in Driveway

Michalke seized Ford 8442 from Childress' driveway.  Childress argues that Michalke did not have permission to enter his property and was trespassing (Dkt. No. 191, CM/ECF p. 49).  But, Michalke did not need a warrant; Ford 8442 was in plain view.

Michalke saw Ford 8442 in the driveway; it matched the description of one of the Ford F350's Gilmore purchased from Milne Ford.  He approached the vehicle and confirmed it was Ford 8442.  Whether Michalke observed this vehicle before or after he came onto the property is immaterial.  He had a right to approach the front door and talk to any occupant to gather information related to his investigation.  Additionally, police officers do not necessarily need a warrant to enter onto a driveway that is open to observation by the public. *See Galaviz*, 645 F.3d at 355-56 (driveway not within protective curtilage of house where it was: (1) not enclosed by a fence or other barrier; (2) short and abutted the public sidewalk; and, (3) no apparent steps were taken to protect the driveway from observation by passerby); *United States v. Pineda–Moreno*, 591 F.3d 1212, 1215 (9th Cir. 2010) ("[B]ecause [defendant] did not take steps to exclude passersby from his driveway, he cannot claim a reasonable expectation of privacy in it, regardless of whether a portion of it was located within the curtilage of his home.").  Therefore,

---

[11] This Magistrate Judge alternatively finds that Childress' challenge to Rover 5579 is barred by the *Heck* doctrine.  *See* Dkt. No. 89.

18

reasonable officers could differ on the appropriateness of entering onto the driveway and seizing

Ford 8442 under the automobile exception.[12]

### d.  Stop Actions: Rover 9114, Ford 8442 and Ford 0841

Michalke placed stop actions on Rover 9114, Ford 8442 and Ford 0841.  Assuming a stop

action constitutes a seizure (i.e., a "meaningful interference with [Childress'] possessory

interest" *Autoworld Specialty Cars, Inc.*, 815 F.2d at 389), based upon Michalke's investigation,

reasonable officers could differ as to whether there was probable cause to place the stop actions

under the automobile exception.  Therefore, Michalke is also entitled to qualified immunity with

respect to his decision to place the stop actions.

### D.  Childress' Fifth And Fourteenth Amendment Claims

"The Fourteenth Amendment's Due Process Clause restricts the activities of the states

and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes

only the actions of the federal government." *Scott v. Clay County Tenn.*, 205 F.3d 867, 873 n.8

(6th Cir. 2000) Michalke also moved to dismiss Childess' Fifth Amendment claims (Dkt. No.

143), correctly pointing out that such claims are inappropriate against Michalke – a state actor.

Therefore, Childress' Fifth Amendment claims should be dismissed with prejudice.

Any remaining claim that Michalke's seizures violated Childress' Fourteenth

Amendment procedural due process right should also be dismissed.  Where a warrantless seizure

is justified "for valid law enforcement purposes in a criminal investigation under the Fourth

---

[12] Childress makes much of the fact that there were no stolen vehicle reports for the
seized vehicles. 'Tis much ado about nothing: a stolen vehicle report is not the only indicator
that a vehicle may have been criminally obtained.

Amendment, any predeprivation due process protections are necessarily subsumed within the Fourth Amendment analysis." *PPS, Inc. v. Faulkner County, Ark.*, 630 F.3d 1098, 1107-08 (8th Cir. 2011); *see also United States v. James Daniel Good Real Property*, 510 U.S. 43, 51-52 (1993) (noting that the due process clause is implicated when the officer's actions go beyond the traditional meaning of search and seizure in the context of a civil forfeiture action where the officer seeks not merely to preserve evidence of wrongdoing, but to assert ownership and control over the property itself).[13]

## IV.  CONCLUSION

For the foregoing reasons, this Magistrate Judge **RECOMMENDS** that: (1) Michalke's motion for summary judgment (Dkt. No. 182) be **GRANTED**; (2) Michalke's motion to dismiss Childress' Fifth Amendment claims (Dkt. No. 143) be **GRANTED**; (3) Childress' motion for summary judgment (Dkt. No. 185) be **DENIED**; and (4) the Milne Defendants' motion to dismiss and for summary judgment (Dkt. No. 183) be **DENIED** as moot.

The parties may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932

---

[13] The two remaining motions (Childress' summary judgment motion (Dkt. No. 185) and the Milne Defendants' dispositive  motion (Dkt. No. 183)) should be **DENIED**.  Childress' motion must fail in light of the above-stated analysis of Michalke's motion, and the Milne Defendants – along with all of the other defendants except Michalke– were dismissed as parties when the Court permitted Childress leave to pursue his claims against Michalke *only*. In addition, this Magistrate Judge has considered Childress' motion to appoint counsel (Dkt. No. 149) and DENIED it.

F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  July 19, 2013

**Certificate of Service**

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, July 19, 2013, by electronic and/or first class U.S. mail.*

Eddrie Butts
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-5542