UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE CHILDRESS,

       Plaintiff,

                                     CASE NO. 10-CV-11008

v.

                                     HON. MARK A. GOLDSMITH

MICHAEL MICHALKE,

       Defendant.

_____/

**OPINION AND ORDER
(1) ACCEPTING THE RECOMMENDATIONS CONTAINED IN THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED JULY 19,
2013 (Dkt. 201) and (2) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 213)**

**I. INTRODUCTION**

This is a civil rights case, which follows the criminal investigation into and the
prosecution of Plaintiff for his role in a scheme to obtain automobiles through larceny by
false pretenses. See People v. Childress, No. 299592, 2012 WL 1890181 (Mich. Ct. App.
May 22, 2012) (affirming Plaintiff's conviction for larceny by false pretenses in violation of
Mich. Comp. Laws § 750.218). Following Plaintiff's conviction, Plaintiff, proceeding pro se,
initiated the present case against several defendants, including Defendant Michael Michalke,
the principal investigator of the scheme from the Macomb County Sheriff's Department Auto
Theft Squad ("MATS").[1] The matter presently before the Court is the amended Report and

---

[1] In the original complaint, Plaintiff sued 34 defendants, including both corporate entities and
individuals. Compl. (Dkt. 1). Defendants included police officers, automotive financial
institutions, a pawn shop, and representatives of those organizations, among others. Id. The
Court dismissed the complaint for failure to state a claim, but conditionally granted Plaintiff
leave to amend. 3/9/12 Order (Dkt. 98). Plaintiff filed a motion to amend and a proposed
amended complaint, seeking to name 39 defendants. Pl. Mot. to Am. (Dkt. 99). The
Magistrate Judge issued an order granting in part and denying in part the motion to amend,
because Plaintiff failed to state a claim against any of the proposed defendants, except
Defendant Michalke. 9/13/12 Order (Dkt. 131); see also 11/29/12 Order (Dkt. 170)
(overruling Plaintiff's objections to Dkt. 131).

Recommendation ("R&R") of former Magistrate Judge Mark A. Randon, issued on July 19, 2013 (Dkt. 201). In the R&R, the Magistrate Judge recommends (i) granting Defendant Michalke's motion for summary judgment (Dkt. 182), (ii) granting Defendant Michalke's motion to dismiss (Dkt. 143), and (iii) denying Plaintiff's motion for summary judgment (Dkt. 185).[2]

The procedural background of this case, along with the standard of review and legal principles governing the pending motions, have been adequately set forth in the R&R and need not be repeated here. Plaintiff filed objections to the Magistrate Judge's recommendations, see Pl. Objs. (Dkt. 213), and Defendant Michalke did not file a responsive brief. The Court reviews de novo those portions of the R&R to which a specific objection has been made. Fed. R. Civ. P. 72(b)(3). For the reasons that follow, the Court will accept the recommendations in the R&R, overrule Plaintiff's objections, and enter judgment in favor of Defendant Michalke.

## II. BACKGROUND

Although the R&R sufficiently addressed the background of the case, the Court briefly sets forth the relevant facts to provide sufficient context for Plaintiff's objections concerning how various vehicles were seized.

In 2007, Plaintiff "persuaded his girlfriend, Tomeka Gilmore, to purchase or lease several motor vehicles in financed transactions, and then traded in one of the vehicles for consideration after obtaining a replacement certificate of title that falsely indicated that there

_____

[2] After the Magistrate Judge issued the R&R, Plaintiff did not file objections and the Court accepted the R&R and entered judgment in favor of Defendant Michalke. See 8/9/13 Order (Dkt. 203). The R&R was returned to the Court as undeliverable thereafter; it appeared that Plaintiff had not updated the Court with his most recent address. See 8/13/13 Notice (Dkt. 205). Plaintiff then resurfaced and moved to vacate the judgment, arguing that, although he had moved to a new place of incarceration, he had sent an updated address to the Clerk, but that the Clerk had failed to update the docket. Pl. Mot. (Dkt. 207). The Court granted Plaintiff's motion and permitted him to file objections, see 11/5/13 Order (Dkt. 209), which are the ones before the Court, see Pl. Objs. (Dkt. 213).

was no security interest on the vehicle." <u>Childress</u>, 2012 WL 1890181, at *1.  Although all the contracts for the vehicles were in Gilmore's name, Plaintiff "conducted all of the negotiations and handled all of the transactions, and he took possession of the vehicles."  <u>Id.</u> Gilmore agreed to help Plaintiff "acquire the vehicles because she trusted" Plaintiff, "believed that he needed the vehicles for his 'leasing company,' and he told her that he would make all of the lease and installment payments."  <u>Id.</u>

As part of this scheme, Gilmore acquired three vehicles from the Russ Milne Ford dealership between November and December of 2007: Ford 8442, Ford 0841, and a Ford Fusion.[3]  Gilmore purchased Ford 8442, leased Ford 0841, and traded in Rover 5579 for the Fusion and approximately $20,000 in cash.  4/20/10 Tr. at 109, 111, 117-120 (Dkt. No. 182-3).  Although Gilmore signed the paperwork for the deals, Plaintiff negotiated the Rover 5579 trade-in transaction.  <u>Id.</u> at 130-133.

Soon after these transactions, Gilmore and Plaintiff sought to exchange the Ford Fusion for a Ford Mustang.  <u>Id.</u> at 134.  The dealership, however, became aware of a fraud alert on Gilmore and investigated Rover 5579, discovering that an approximately $50,000 lien was on the vehicle, even though Gilmore had represented that Rover 5579 was lien-free. <u>Id.</u> at 136-138.  The dealership contacted MATS and advised it that Gilmore had fraudulently obtained the Fusion by providing a falsified title for Rover 5579.  <u>Id.</u> at 139; 4/21/10 Tr. at 103 (Dkt. No. 182-5).  The dealership then told Gilmore and Plaintiff to come in to make the proposed upgrade without disclosing the revelation about the lien on Rover 5579.  4/20/10 Tr. 138-139.

On January 4, 2008, Gilmore and Plaintiff drove to the dealership in Mercedes 3032 expecting to make the upgrade.  <u>Id.</u> at 138.  Before they arrived, the dealership had called MATS, which sent officers to the dealership.  4/21/10 Tr. at 117.  The officers confronted

---

[3] Where applicable, the Court refers to each vehicle by the make of the vehicle and the last four digits of the vehicle's "VIN" or "vehicle identification number."

Plaintiff and Gilmore at the dealership, and one of the officers called Defendant Michalke and informed him of the events.  Id.  Defendant Michalke stated that he participated over the phone in the decision to have the officers arrest Gilmore and Plaintiff, and that he was the one who ordered the seizure of Mercedes 3032 at the dealership.  Id. at 71-72.  A private towing company took Mercedes 3032 to its lot, and Michalke took it to the police garage shortly thereafter.

Defendant Michalke then took over the investigation on January 7, 2008.  4/21/10 Tr. at 117.  During the course of Defendant Michalke's investigation, he placed "stop actions" or "holds" with the Michigan Secretary of State on the Fusion, Ford 8442 and Ford 0841, so that the titles could not be transferred.  Def. Br. at 23, 24 (Dkt. 182); Pl. Br. at 4, 43, 48 (Dkt. 191).[4]  Defendant Michalke then took possession of Rover 5579, removing it from the dealership's premises.  4/21/10 Tr. at 79.  Defendant Michalke obtained a copy of the certificate of title to Rover 9144, which listed only Gilmore as the owner of the vehicle. Rover 9144 Title (Dkt. 182-21).  Defendant Michalke also placed a stop action on Rover 9144.  Id. at CM/ECF Pg ID 3763.

Later in the investigation, on February 19, 2008, Defendant Michalke went to the address on Plaintiff's driver's license, which he had obtained after Plaintiff's arrest.  4/21/10 Tr. at 83.  Defendant Michalke observed a white Ford truck parked in the home's driveway that matched the description of one of the Ford trucks from the dealership.  Id. at 84. Defendant Michalke approached the truck, and confirmed through the publicly-visible VIN number on the dash of the vehicle that it was Ford 8442.  Id.  He then called a towing service to take the vehicle, pending the outcome of his investigation.  Id. at 86.

Defendant Michalke stated that the house appeared to be unoccupied because there was a "for sale" sign on the front lawn and that the home appeared to be sparsely furnished.

---

[4] The parties do not dispute that Defendant Michalke placed the stop actions on the vehicles. See, e.g., Def. Br. at 23, 24 (Dkt. 182); Pl. Br. at 4, 43, 48 (Dkt. 191).

Id.  Defendant Michalke also looked through the garage window and saw three more vehicles, including a silver Ford sedan that he believed was the Fusion that Gilmore leased as part of the Rover 5579 trade-in.  Id.

The next day, February 20, 2008, Defendant Michalke obtained a search warrant for the home.  Id. at 86, 88.  The search warrant referenced the address of the property to be searched as "32 Oakbridge Dr, Oakland Township, Oakland County, Michigan, 48306."  Search Warrant (Dkt. 182-15).  The warrant specifically identified the property as a "two-story, single family, orange brick home" with a driveway on the "east side" of the home.  Id.  The warrant also authorized the search for and seizure of (i) a 2008 Ford Fusion, (ii) Ford 0841, and (iii) "any other vehicles which may be stolen, or obtained under fraudulent circumstances."  Id.

At the house, Defendant Michalke contacted the real estate agent listed on the "for sale" sign, and gained access to the home through the agent.  Id. at 87.  Pursuant to the search warrant, Defendant Michalke found in the garage the Ford Fusion obtained from the dealership, Lexus 4963, and Rover 7158.  Id. at 88.  All three vehicles were seized pursuant to the warrant.  Id. at 88-89.

Sometime after the seizure of the vehicles from Plaintiff's residence, the parties agree that Defendant Michalke investigated another vehicle — Mercedes 1694.  Def. Br. at 5-6 (Dkt. 182); Pl. Br. at 49-50 (Dkt. 191).  Defendant Michalke attempted to locate this vehicle, but apparently never did.

Following Defendant Michalke's investigation, Plaintiff was tried and convicted in a bench trial before the Macomb County Circuit Court.  Childress, 2012 WL 1890181, at *1.  Plaintiff was convicted of larceny by false pretenses of $20,000 or more, but less than $50,000, in violation of Mich. Comp. Laws § 750.218(5)(a).  Id.  Plaintiff was sentenced as a fourth habitual offender, pursuant to Mich. Comp. Laws § 769.12, to a prison term of 19 to

5

120 months.  Id.

### III.  ANALYSIS

Plaintiff advances ten objections.  Pl. Objs. 13-20.  In his objections, Plaintiff contends that the Magistrate Judge erred in recommending the grant of judgment in favor of Defendant Michalke.  None of Plaintiff's objections has merit.  In disposing of Plaintiff's objections, the Court first addresses Plaintiff's objections concerning the alleged Fourth Amendment violations related to the various automobiles that were seized.  The Court then addresses Plaintiff's alleged violations of his rights under the Fifth and Fourteenth Amendments.

#### A.  Mercedes 1694

In his first objection, Plaintiff objects to the R&R's conclusion that Defendant Michalke has qualified immunity for the unsuccessful search for Mercedes 1694.  Pl. Objs. at 13.  Plaintiff argues that Defendant is not entitled to qualified immunity because Defendant "did not submit any proofs under Rule 56," and that Defendant "conducted an illegal search into the whereabouts of the vehicle."  Pl. Objs. at 13.  The Court rejects these arguments.

With respect to Plaintiff's argument that "Defendant did not submit proofs under Rule 56," this is a new argument raised for the first time in his objections to the R&R.  "It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the Magistrate Judge."  Marr v. Foy, No. 1:07-CV-908, 2010 WL 3061297, at *4 (W.D. Mich. Aug. 3, 2010) (citing Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). "The Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court."  Id. (quotation marks ommitted).  For this reason, the Court deems this argument waived.

6

As regards Plaintiff's second argument in his first objection, the Court understands Plaintiff's argument to be that Defendant conducted an illegal search into the whereabouts of Mercedes 1694, although, as Plaintiff states, "[t]his vehicle was never part of a criminal investigation." Pl. Objs. at 13. To the extent that Plaintiff focuses on Defendant Michalke's alleged search for the vehicle that purportedly violated Plaintiff's rights under the Fourth Amendment, Defendant has invoked qualified immunity. Upon assertion of qualified immunity by a defendant, "the plaintiff must show that the defendant is not entitled to qualified immunity." Blake v. Wright, 179 F.3d 1003, 1007 (6th Cir. 1999). A defendant is not entitled to qualified immunity if there is a clearly established right and a constitutional violation of such right. Id. at 1007-1008. If state actors of "reasonable competence" could disagree on whether a right existed, "immunity should be recognized." McCloud v. Testa, 97 F.3d 1536, 1553 (6th Cir. 1996). "Objective legal reasonableness is the touchstone" of the determination of whether a right was clearly established. Centanni v. Eight Unknown Officers, 15 F.3d 587, 589 (6th Cir. 1994). Pertinent to Plaintiff's objection are the rights secured by the Fourth Amendment, which protects against unreasonable searches and seizures. United States v. Schuttpelz, 467 F. App'x 349, 352 (6th Cir. 2012). The scope of the Fourth Amendment is limited to a "citizen's personal security," Penn. v. Mimms, 434 U.S. 106, 108-109 (1977), or searches of or on private property, Kovacic v. Cuyahoga Cnty., 724 F.3d 687, 698 (6th Cir. 2013).

Here, Plaintiff cannot overcome qualified immunity because there was no seizure of Mercedes 1694, nor any search of the vehicle — even assuming that the vehicle was the property of Plaintiff. Plaintiff's contention that a search for the vehicle amounted to a constitutional violation is entirely without merit. The Court is unaware of any authority holding that a police officer's investigation into a vehicle's whereabouts can amount to a Fourth Amendment violation. And no such authority likely exists, because such a holding

7

would transform routine police work into grounds for civil liability.  Plaintiff has not met his burden to show that Defendant's actions amounted to a constitutional violation.

Accordingly, Plaintiff's first objection is overruled.

### B.  Rover 7158 and Lexus 4963

In Plaintiff's second and third objections, Plaintiff appears to argue — though it is difficult to penetrate Plaintiff's rambling and conclusory language — that the Magistrate Judge erred by concluding that Defendant had qualified immunity for the seizures of Rover 7158 and Lexus 4963.   As noted above, on February 19, 2008, Defendant Michalke discovered these vehicles in a garage attached to Plaintiff's residence.   The next day, Defendant Michalke obtained a warrant, returned to the residence, and seized the vehicles. Plaintiff argues that Defendant conducted an unlawful search by peering through the window of the garage prior to obtaining the warrant.   Pl. Objs. at 14-15 (stating that Defendant "peered through the garage window," "the garage was not open to public viewing," and "there was a no trespassing sign on the property").   These objections lack merit.

The Court notes that these are new arguments raised for the first time in Plaintiff's objections to the R&R.[5]   As stated in relation to Plaintiff's first objection, a party may not raise an argument or advance a new theory that was not presented to the Magistrate Judge. Marr, 2010 WL 3061297, at *4; Murr, 200 F.3d at 902 n.1.   The Court deems these arguments to be waived.

Additionally, Plaintiff failed to object to the R&R's conclusions that Rover 7158 and Lexus 4963 were properly seized pursuant to the warrant or, alternatively, under the plain-view doctrine.   R&R at 13-16.   The failure to object to these recommendations constitutes waiver.   See Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress

---

[5] Plaintiff's response brief to Defendant's motion for summary judgment focuses on the alleged illegal seizures and various state torts. Pl. Br. at 45-47 (Dkt. 191).  The brief makes no reference to illegal searches.

intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370, 1373–1374 (6th Cir. 1987) (failure to file objection to R&R "waived subsequent review of the matter"); Cephas v. Nash, 328 F.3d 98, 1078 (2d Cir. 2003) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."); Lardie v. Birkett, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002) ("As to the parts of the report and recommendation to which no party has objected, the Court need not conduct a review by any standard.").

Even considering the merits, Plaintiff's arguments are not persuasive. Construing Plaintiff's arguments as targeting the search after Defendant Michalke had obtained the warrant, the scope of the warrant permitted the search. As the Sixth Circuit has held, "the context of the search determines the scope of the search." United States v. Popham, 250 F. App'x 170, 174 (6th Cir. 2007) (emphasis in original). In Popham, the defendant argued that the search of three greenhouses and a residence did not conform to the warrant, which referenced only one greenhouse. Id. The court rejected this argument, because there was probable cause to suspect that the defendant was engaged in the "business of growing and selling marijuana." Id. (emphasis deleted). Likewise, probable cause supported Defendant Michalke to suspect that Plaintiff was engaged in a scheme to obtain automobiles through larceny by false pretenses. Therefore, in the context of the search for automobiles, a search of the garage, which was attached to the residence, see Search Warrant Aff. ¶ 9 (Dkt. 182-12), was within the scope of the warrant. Popham, 250 F. App'x at 174; see also United States v. Dunn, 723 F.3d 919, 929 (8th Cir. 2013) (holding that an attached garage and a vehicle within it "were not noticeably separate from" a residence referenced in a search warrant, "and were therefore included in the warrant's scope").

9

Furthermore, assuming that Plaintiff's claim that Defendant Michalke's peering through the garage window constituted an unlawful search was properly before the Court, the Court rejects the claim because any such search did not amount to a constitutional violation to defeat qualified immunity.  It is well-established that the Fourth Amendment only protects against <u>unreasonable</u> searches and seizures.  <u>Widgren v. Maple Grove Tp.</u>, 429 F.3d 575, 578 (6th Cir. 2005).  In the Sixth Circuit, if police look through a window in the course of a criminal investigation, such action can constitute a search.  <u>See</u> <u>United States v. Langley</u>, 466 F.2d 27, 33 (6th Cir. 1972) (stating that police investigation, which included walking onto the premises of a home, walking into a large moving truck's storage compartment located near the home, and peering through windows of the home, constituted a search under the Fourth Amendment).  However, a warrantless search may nevertheless be reasonable if the Court (i) determines "the presence of circumstances sufficiently exigent to warrant disregard of the Fourth Amendment's ban against invasions of privacy," and (ii) examines "the manner and scope of the search that was conducted in response to the purportedly exigent circumstances." <u>Id.</u> at 34 (quotation marks omitted).  And, of course, "[i]mmunity applies if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights."  <u>Thacker v. City of Columbus</u>, 328 F.3d 244, 260 (6th Cir. 2003).

Here, Plaintiff had been arrested on a larceny-by-conversion charge involving an automobile.  Defendant Michalke — as part of his investigation — then came to the address listed on Plaintiff's driver license about five weeks after Plaintiff's arrest.  4/21/10 Tr. at 83. Defendant Michalke observed a "for sale" sign on the front lawn with a box with real estate flyers.  <u>Id.</u> at 86.  Defendant Michalke saw that the home was sparsely furnished.  <u>Id.</u>  He also observed a Ford 350 truck in the driveway.  <u>Id.</u> at 84.  After ascertaining that the truck was one of the vehicles possibly obtained through fraud, Defendant Michalke called a towing service to remove the truck.  <u>Id.</u>  Defendant Michalke also peered through a window of the

10

garage.  Id. at 86.  In the garage, he saw a Ford sedan and two other vehicles, Rover 7158 and Lexus 4963.  Id.

Given Defendant Michalke's ongoing investigation and locating of the Ford 350, the circumstances justified the conduct.  Defendant Michalke was investigating a fraud scheme involving automobiles, items that are inherently easily transportable.  Autoworld Specialty Cars, Inc. v. United States, 815 F.2d 385, 389 (6th Cir. 1987).  He had found evidence that Plaintiff may have been in the midst of a move from his residence, such as the realtor's sign.  These circumstances justified Defendant Michalke's brief look into the garage window, which was a minimal invasion of privacy.  Langley, 466 F.2d at 33-34.  The Court concludes that no constitutional violation occurred.

Further, even if a violation did occur, reasonable officials could disagree whether a brief look through the window of the garage in an automobile investigation violated Plaintiff's rights.  Therefore, immunity applies regarding Plaintiff's claims concerning Rover 7158 and Lexus 4963.  Thacker, 328 F.3d at 260.

Accordingly, Plaintiff's second and third objections are overruled.

**C.  Mercedes 3032**

Plaintiff's fourth objection concerns Mercedes 3032.  Pl. Objs. at 16-17.  Although not entirely clear, Plaintiff's argument appears to be that qualified immunity should not apply to Defendant Michalke because Defendant Michalke seized the vehicle without probable cause.  Id. at 16.  The Court rejects this argument.

Upon de novo review, the Court observes that the R&R analyzed Plaintiff's Fourth Amendment claim for unconstitutional seizures through the lens of the automobile exception.  Under that exception, because of the inherent mobility of automobiles, a warrantless seizure of an automobile is appropriate where there is probable cause to associate it with criminal activity.  Autoworld, 815 F.2d at 389.  "Probable cause exists when there is a fair probability

11

that contraband or evidence of a crime will be found in a particular place." United States. v. Redmond, 475 F. App'x 603, 607 (6th Cir. 2012). In determining whether probable cause exists, courts examine the objective facts known to the officers at the time of the search. Id.

As the R&R correctly stated, the sales manager at the car dealership suspected that Plaintiff and Gilmore had perpetrated fraud against the dealership in December 2007. The sales manager was aware that, when Plaintiff and Gilmore traded in a 2004 Land Rover for a 2008 Ford Fusion and approximately $20,000 in cash, the couple had presented an unencumbered title to the Land Rover. The sales manager subsequently discovered that the Land Rover had a $50,000 lien. 4/20/10 Tr. at 138. When Plaintiff and Gilmore called the dealership and stated that they wanted to trade in the Fusion for a Mustang on January 4, 2008, the sales manager gave them the impression that he would accommodate them, but then he called the police. 4/20/10 Tr. 138-139. The couple drove Mercedes 3032 to the dealership, and, after their arrival, they were arrested. 4/21/10 Tr. at 117-118. Although Defendant was not at the dealership, he had conferred with police officers prior to the arrest. Id. Following the arrests, which occurred on a Friday, a private company towed Mercedes 3032 to a private lot, and, during the following week, Defendant took possession of the vehicle and drove it to a police garage as part of his investigation.[6] Id. at 72-73, 118.

Here, Defendant Michalke had probable cause to search and seize Mercedes 3032 without a warrant because he had probable cause to associate it with criminal activity, namely Plaintiff's suspected involvement in an automobile fraud scheme. By the time Mercedes 3032 was seized, Defendant Michalke had already learned of the suspected larceny by

---

[6] The record discloses that Gilmore was the only person on the title of Mercedes 3032. 12/10/07 Mercedes 3032 Title at CM/ECF Pg ID 3748 (Dkt. 193-4). Without a possessory interest in Mercedes 3032, Plaintiff could not sustain a Fourth Amendment violation. Rodriguez v. City of Cleveland, 439 F. App'x 433, 450-451 (6th Cir. 2011) (no Fourth Amendment violation regarding detention of trucks where sales agreements entered into by the plaintiff were rescinded). Indeed, the record does not reveal and Plaintiff does not argue in his summary judgment response brief or objections that he demanded the return of Mercedes 3032 at the time of the seizure or any time afterward.

conversion regarding the 2004 Land Rover.  4/21/10 Tr. at 75-77.  The Court agrees with the R&R that, at the time Defendant seized Mercedes 3032, a fair probability existed for Defendant to associate the vehicle with the automobile fraud scheme; it was the vehicle in which Plaintiff drove to the dealership to arrange his next automobile transaction. Autoworld, 815 F.2d at 389.  Indeed, at Plaintiff's criminal trial, Defendant Michalke testified that his investigation eventually revealed that Mercedes 3032 had a washed title. 4/21/10 Tr. at 119.  Given the probable cause of a vehicle fraud scheme perpetrated by Plaintiff, the automobile exception for a warrantless seizure was plainly applicable.

Even if a constitutional violation occurred, the Court concludes that reasonable officials could disagree whether the automobile exception would shield the seizure of Mercedes 3032 incident to Plaintiff's arrest.  Thacker, 328 F.3d at 260.  Therefore, immunity applies regarding Plaintiff's claims concerning Mercedes 3032.  Id.

Plaintiff's fourth objection is overruled.

### D.  Rover 5579

Plaintiff's fifth objection concerns Rover 5579.  Pl. Objs. at 17-18.  Plaintiff argues that Defendant Michalke never obtained a warrant to seize this vehicle and, therefore, should not have the protection of qualified immunity.  Plaintiff also argues that he has stated a tort claim of tortious interference with a contractual relationship against Defendant Michalke. The Court rejects Plaintiff's arguments.

As mentioned above, Gilmore traded in Rover 5579 for the 2008 Ford Fusion. 4/21/10 at 78-79.  MATS took Rover 5579 from the dealership and impounded it pending the outcome of the investigation into Gilmore and Plaintiff.  Id.

Plaintiff has not demonstrated a clearly established Fourth Amendment right to Rover 5579 because it does not appear that Plaintiff had any possessory interest in the vehicle. Rover 5579 was traded in for the Fusion, and, before then, it had Gilmore's name on the title.

Id.  As Plaintiff had no possessory interest in Rover 5579, no Fourth Amendment violation concerning his rights occurred, and Defendant Michalke enjoys qualified immunity.  Blake, 179 F.3d at 1007-1008.

Furthermore, assuming that Plaintiff had some possessory interest in the vehicle sufficient to confer Fourth Amendment rights, no constitutional violation occurred.  The trade-in transaction was suspected by the police to be a larceny by conversion.  Michalke had sufficient probable cause to seize Rover 5579 pursuant to the automobile exception. Autoworld, 815 F.2d at 389.  Therefore, qualified immunity shields Defendant Michalke regarding Plaintiff's Fourth Amendment claims arising from the seizure of Rover 5579.

Even if a constitutional violation occurred from Defendant Michalke's seizure of Rover 5579 from the dealership, the Court concludes that reasonable officials could disagree whether the automobile exception would apply to justify the seizure.  Thacker, 328 F.3d at 260.  Therefore, immunity applies regarding Plaintiff's constitutional claims for Rover 5579. Id.

Concerning Plaintiff's claim for tortious interference with a contractual relationship, the Court agrees with the R&R that Plaintiff's state tort claims should be dismissed.  See R&R at 13 n.9 (recommending dismissal of Plaintiff's state-law claims).  Importantly, Plaintiff did not object to this portion of the R&R, and thus has waived review of this recommendation.  See Thomas, 474 U.S. at 150; Smith, 829 F.2d at 1373–1374; Cephas, 328 F.3d 1078.

Moreover, as the Court ultimately agrees with the R&R that all of Plaintiff's federal constitutional claims fail (i.e., those claims arising under the Fourth, Fifth, and Fourteenth Amendments), all of Plaintiff's state-law claims should be dismissed without prejudice, including the sole tort claim referenced in Plaintiff's objections — the tortious interference claim regarding Rover 5579.  Harper v. AutoAlliance Int'l, 392 F.3d 195, 210 (6th Cir. 2004)

14

(stating that "if the federal claims are dismissed before trial, the state claims should be dismissed as well") (quotation marks and ellipsis omitted).[7]

Accordingly, the Court overrules Plaintiff's objection.

### E.  Ford 8442

Plaintiff's sixth and eighth objections concern Ford 8442.  Pl. Objs. at 18-19.  Plaintiff argues that Defendant violated his Fourth Amendment rights because Defendant came onto the driveway of his residence and seized Ford 8442 by having it towed.  Id. at 18.  Plaintiff also argues that Defendant violated his Fourth Amendment rights by preventing any future title transactions or changes in ownership by placing a stop action on Ford 8442.  Id. at 19. The Court rejects Plaintiff's arguments.

The Fourth Amendment imposes a per se requirement that police officers obtain a warrant prior to conducting a search or seizure, absent recognized exceptions.  United States v. Galaviz, 645 F.3d 347, 354-355 (6th Cir. 2011).  An exception to this rule is the plain-view doctrine, which states that, "if police are lawfully in a position from which they view an object, if [the object's] incriminating character is immediately apparent, and if the officers have a lawful right of access to the object," the police may seize the object without a warrant. Id. at 355 (citing United States v. Herndon, 501 F.3d 683, 692 (6th Cir. 2007)).

Here, the R&R properly concluded that reasonable officers could differ as to whether Defendant Michalke could seize Ford 8442 from the driveway without a warrant.  Defendant Michalke lawfully observed the location of Ford 8442, as the vehicle was parked on a driveway and visible to the public.  Galaviz, 645 F.3d at 355 (holding that officer lawfully

---

[7] Despite the Court's dismissal without prejudice of the state-law claims, the Court doubts the viability of such claims if re-asserted in state court because of the applicable statute of limitations.  See, e.g., Experts, LLC v. JPMorgan Chase & Co., No. 13-cv-12550, 2013 WL 4487508, at *3 (E.D. Mich. Aug. 20, 2013) ("The statute of limitations for a claim of tortious interference with business relationships and tortious interference with contracts is three years." (citing DXS, Inc. v. Siemens Medical Sys., Inc., 100 F.3d 462, 471 (6th Cir. 1996) and James v. Logee, 388 N.W.2d 294, 296 (Mich. Ct. App. 1986))).

observed handgun in vehicle parked in a driveway because the driveway was immediately adjacent to a house, was not enclosed by a fence or other barrier, was short, "and no apparent steps were taken by the residents of the house to protect the driveway from observation by passersby"); see also Autoworld, 815 F.2d at 389 (no Fourth Amendment violation where vehicle, a Porsche 930, was seized from a public driveway).

As a car owner has "no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle," Galaviz, 645 F.3d at 355, Defendant Michalke could determine the VIN of Ford 8442 by observing it through the windshield and matching it to the truck that had been purchased by Gilmore for which she had never paid.   4/21/10 Tr. at 83-84.[8]   This revelation sufficiently connected the incriminating character of the vehicle to the fraud scheme Defendant was investigating. Galaviz, 645 F.3d at 355.

Lastly, Defendant Michalke had a lawful right to access the Ford 350 under the automobile exception, given the inherent mobility of automobiles and his belief that Ford 8442 was connected to criminal activity.   Autoworld, 815 F.2d 389.   Notably, Defendant Michalke's course of action in seizing the car was justified because of the possibility that the car would have been moved if steps were not taken immediately.   Cf. Galaviz, 645 F.3d at 357 n.7 (noting that, in cases "where there is no risk that the car will be moved," that "the preferred course of action would be for officers to secure the car and obtain a warrant").

The Court also agrees with the R&R that Defendant Michalke could place a stop action on title transfers for Ford 8442, pursuant to the automobile exception.  For purposes of this objection, the Court assumes without deciding that a stop action, whereby an officer

---

[8] Although not detailed by the parties, the VIN of an automobile often can be ascertained by examining the dashboard through the windshield on the driver's side of a vehicle.  See, e.g., Harrill v. Blount Cnty., Tenn., 55 F.3d 1123, 1125 (6th Cir. 1995) ("Detective Hatcher then used the vehicle identification number (VIN), visible through the windshield on the driver's side of the dashboard, to confirm that the Suzuki was stolen.").

informs the Michigan Secretary of State to stop future title transactions or changes in ownership of an automobile, constitutes a seizure under the Fourth Amendment.[9]   As explained above, upon a finding of probable cause that connects the automobile to criminal activity, the automobile exception permits an officer to seize an automobile without a warrant.  Autoworld, 815 F.2d 389.  Here, Defendant Michalke was permitted to prevent Plaintiff from selling the automobile because Ford 8442 was sufficiently connected to Plaintiff's scheme.

Furthermore, Plaintiff has not demonstrated a clearly established right that the placement of a stop action on a vehicle amounts to a seizure under the Fourth Amendment, as is his burden to defeat qualified immunity.  Blake, 179 F.3d at 1007-1008.  Therefore, even if Defendant's conduct of placing a stop action on Ford 8442 amounted to an unreasonable seizure in violation of the Fourth Amendment, such a right was not clearly established to defeat qualified immunity.

Accordingly, Plaintiff's sixth and eighth objections are overruled.

**F.  Rover 9144 and Ford 0841**

Plaintiff's seventh and ninth objections respectively concern Rover 9144 and Ford 0841.  Pl. Objs. at 19-20.  Plaintiff argues that Defendant Michalke violated his Fourth Amendment rights by placing stop actions on these vehicles.  The Court rejects these arguments for the same reasons outlined above regarding Plaintiff's failure to establish that

---

[9]  Although the Court has been unable to find a case addressing stop actions in the context of the Fourth Amendment, the Court notes that a seizure is "a meaningful interference with [a] possessory interest."  Autoworld, 815 F.2d at 389.  Stop actions arguably affect an automobile owner's possessory interest by preventing the selling of the automobile or the transfer of the automobile's title, in other words, the owner's ability to dispossess the automobile.  However, the rights secured by the Fourth Amendment do not extend typically to dispossession because "the Fourth Amendment protects an individual's interest in retaining possession of property."  Fox v. Van Oosterum, 176 F.3d 342, 351 (6th Cir. 1999) (emphasis added).  Given that a stop action is, at best, only arguably a potential infringement of the Fourth Amendment, Plaintiff has failed to show that there has been a violation of a "clearly established" constitutional right.  Thacker, 328 F.3d at 260.  This provides an alternative basis for upholding Defendant's defense of qualified immunity.

placing a stop order violated his Fourth Amendment rights or that such a right was clearly established. Additionally, even if such a right was clearly established, the Court agrees with the R&R that Defendant could place a stop action on these vehicles. Pursuant to the automobile exception, Defendant could surmise that a fair probability existed that these vehicles were associated with criminal activity. Autoworld, 815 F.2d at 389. Accordingly, Plaintiff's seventh and ninth objections are overruled.

**G.  Fifth and Fourteenth Amendment Claims**

In Plaintiff's tenth objection, in a mere 72 words without citation to any legal authority, Plaintiff conclusorily argues that the R&R erred in recommending that Defendant Michalke has qualified immunity for Plaintiff's Fifth and Fourteenth Amendment claims. Pl. Objs. at 20. Plaintiff claims that "[t]here was no probable cause because there were no complainants or victims." Id. The Court rejects Plaintiff's arguments.

Plaintiff does not explain what specific conduct Defendant Michalke did to violate his rights secured by the Fifth and Fourteenth Amendments. Plaintiff also does not specify for the Court what error is contained in the R&R; Plaintiff appears to merely disagree with the R&R. The objection is vague and the Court cannot discern the particular basis for Plaintiff's objection. Consequently, the objection fails on its face. Drew v. Tessmer, 36 F. App'x 561 (6th Cir. 2002) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object."). "[O]bjections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Assuming that Plaintiff made a proper objection concerning the R&R's treatment of his Fifth Amendment claim, claims arising under the Fifth Amendment are cognizable only against federal actors, not state actors. Scott v. Clay Cnty., 205 F.3d 867, 873 n.8 (6th Cir.

2008).  Plaintiff's claim under the Fifth Amendment asserted against Defendant Michalke lacks merit because Defendant Michalke is a state actor, not a federal actor.  Id.

Also, assuming that Plaintiff made a proper objection to the R&R as concerns his Fourteenth Amendment claim, the Court agrees with the R&R's analysis.  Where a warrantless seizure is justified "for valid law enforcement purposes in a criminal investigation under the Fourth Amendment, any predeprivation due process protections are necessarily subsumed within the Fourth Amendment analysis."  PPS, Inc. v. Faulkner Cnty., 630 F.3d 1098, 1107-1108 (8th Cir. 2011).  Here, Plaintiff's Fourteenth Amendment claim is subsumed by his Fourth Amendment claims and is rejected accordingly.

Finally, even if Plaintiff's claim was not subsumed by the Court's disposal of Plaintiff's claims arising under the Fourth Amendment, Plaintiff's argument that "[t]here was no probable cause because there were no complainants or victims" still fails.  Pl. Objs. at 20. Plaintiff misunderstands probable cause because its existence does not depend on a victim or "complainant," but rather on there is "a fair probability that contraband or evidence of a crime will be found in a particular place."  Redmond, 475 F. App'x at 607.  In determining whether probable cause exists, courts review the facts known by an officer at the time of the search.  Id.  As discussed above, Defendant Michalke had probable cause to justify his seizure of the vehicles.

Accordingly, the Court overrules Plaintiff's tenth objection.[10]

### IV.  CONCLUSION

Accordingly, (i) Defendant's motion for summary judgment is granted (Dkt. 182), (ii) Defendant's motion to dismiss (Dkt. 143) is granted, and (iii) Plaintiff's motion for summary judgment (Dkt. 185) is denied.

---

[10] The R&R also recommends denying the Milne Defendants' motion for summary judgment (Dkt. 183) because these defendants are no longer part of the case.  No party has objected to this recommendation and the Court concludes that this recommendation is proper and accepts it.  See Thomas, 474 U.S. at 150; Smith, 829 F.2d at 1373-1374.

SO ORDERED.

Dated:  August 4, 2014                              s/Mark A. Goldsmith
        Flint, Michigan                            MARK A. GOLDSMITH
                                                   United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 4, 2014.

                                                   s/Deborah J. Goltz
                                                   DEBORAH J. GOLTZ
                                                   Case Manager